GARY M. RESTAINO
United States Attorney
District of Arizona
Victoria H. Gray
Assistant U.S. Attorney
Arizona State Bar No. 037472
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7693
Victoria.Gray2@usdoj.gov
*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jennifer Sharp-Stilliard, | No. CV-23-02519-PHX-SRB |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| United States Department of Homeland Security Immigration and Customs Enforcement, | |
| Defendant. | |

Defendant United States Immigration and Customs Enforcement ("ICE"), by and through undersigned counsel, hereby files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The parties have stipulated that the only issues to be briefed at summary judgment include: (1) the adequacy of Defendant's search; and (2) Plaintiff's allegation that, Defendant, during its investigation into Mrs. Sharp-Stilliard's alleged sexual assault of C.T., a minor at the time, audio recorded an interview of C.T. and that Defendant failed to produce this alleged recording. Docs. 16, 17. This Motion is supported by the following Memorandum of Points and Authorities, by Defendant's Statement of Facts the exhibits thereto ("DSOF"), and by all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      SUMMARY OF ARGUMENT

This action concerns the adequacy of Defendant's search in response to Plaintiff's request for documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Doc. 1.  The FOIA request was made in the course of discovery in *Terry v. Sharp-Stilliard, et al.*, Maricopa County Superior Court Case No. CV2020-056304, a civil lawsuit pending against Mrs. Sharp-Stilliard, a high school teacher accused of having sexually assaulted her underage student, C.T. (hereinafter, the "Minor Victim"), while on a school trip to Vancouver, British Columbia ("B.C.").  Doc. 1-1, Ex. 1 at 2.

To prevail in a FOIA action where the adequacy of the search is at issue, the Defendant agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985). The fundamental question is not whether other documents possibly responsive to the request might exist, but rather "whether the *search* for those documents was *adequate*." *Id.* (emphasis in original).  Thus, the focus is on the effort, not on the result. *See id.*

Plaintiff has received all relevant documents that Defendant could locate but nevertheless insists that Defendant's Homeland Security Investigations ("HSI"), during its investigation into Plaintiff's alleged sexual assault of the Minor Victim, audio recorded an interview of the Minor Victim, and that Defendant failed to produce this alleged recording. Doc. 1 at 3, ¶ 11.  Defendant dutifully searched for and produced all responsive documents subject to statutory withholdings.  DSOF at ¶¶ 6-14.  No recorded interview of the Minor Victim was located—whether recorded by HSI or any other agency—nor was there reference to an HSI recorded interview of the Minor Victim in HSI's Reports of Investigation ("ROIs").  DSOF at ¶¶ 13, 17-19.

As set forth in the attached declaration, Defendant made a reasonable effort to search its files for documents, including any recorded interview of the Minor Victim, using methods that would be reasonably expected to locate any such documents.  DSOF at ¶¶ 3-13, 16-19.  Moreover, Defendant tasked the Special Agent responsible for the investigation

1  into the alleged sexual assault to conduct not one, but two searches, and neither search
2  located a recorded interview of the Minor Victim. DSOF at ¶¶ 8-13, 18-19. Because the
3  adequacy of a search under FOIA is determined by the search itself—not the results—the
4  Court should grant Defendant's Motion for Summary Judgment.

## II.   FACTUAL AND PROCEDURAL HISTORY

In April 2018, Plaintiff was a high school teacher at Rancho Solano Preparatory School where the Minor Victim was a student. Doc. 1-1, Ex. 1 at 3, ¶¶ 4-6. Plaintiff is alleged to have sexually assaulted the Minor Victim while on a school trip to Vancouver, B.C. Doc. 1-1, Ex. 1 at 5-6, ¶¶ 24-26. The alleged sexual assault was reported to local law enforcement in Vancouver, and then referred to Defendant's HSI for further investigation because Plaintiff is a British citizen. Doc. 1 at 2, ¶ 5; Doc. 11 at 2, ¶ 5. Defendant concluded its investigation in June 2018. Doc. 1 at 3, ¶ 8; Doc. 11 at 2, ¶ 8.

In December 2020, the Minor Victim (now an adult) filed a civil lawsuit in Maricopa County against Plaintiff for sexual assault, *Terry v. Sharp-Stilliard, et al.*, Maricopa County Superior Court Case No. CV2020-056304. Doc. 1-1, Ex. 1 at 2.

On June 28, 2022, Defendant received a FOIA request from Plaintiff and assigned it FOIA Case No. 2022-ICFO-22436. DSOF at ¶¶ 1-2. Therein, Plaintiff requested all records in the file for Jennifer Moore Sharp-Stilliard, DOB: XX/XX/1982, COB: UK, related to the ICE HSI investigation of the incident alleged by C.T., DOB: XX/XX/2001. DSOF at ¶ 1.

Because Plaintiff's FOIA request sought records maintained by HSI and because Defendant determined HSI to be the program office reasonably likely to possess responsive records, Defendant tasked HSI to conduct the search. DSOF at ¶¶ 3-6.

On July 8, 2022, HSI's Record Disclosure Unit ("RDU") conducted a search of the Integrated Case Management ("ICM") database which serves as the core law enforcement case management tool used by HSI personnel. DSOF at ¶ 7. ICM is a central database through which HSI personnel can create electronic case files with links to records and documents associated with a particular investigation. DSOF at ¶ 7. HSI's RDU conducted

a search of the ICM using the search terms "Jennifer Moore Sharp-Stilliard," "Jennifer Sharp-Stilliard," "Jennifer Sharp," "Jennifer Stilliard," Plaintiff's date of birth, country of birth, and social security number, and the name and date of birth of the Minor Victim. DSOF at ¶ 7. HSI's RDU determined that the HSI Special Agent responsible for the investigation into the alleged sexual assault at the Phoenix Field Office (hereinafter, "Special Agent") was the individual likely to have responsive records, if any. DSOF at ¶ 8. HSI's RDU therefore tasked the Special Agent with conducting the search for responsive records. DSOF at ¶ 8.

On July 8, 2022, the Special Agent conducted a search of ICM, Outlook Email, HSI's shared drive, and his computer, because those were the places in which he routinely kept records. DSOF at ¶¶ 9-12. The Special Agent searched ICM, Outlook email, and HSI's shared drive using search terms containing the HSI case number and "Jennifer Sharp-Stilliard" because the records would be affiliated with the HSI case number or the name of the subject of investigation. DSOF at ¶ 12. The Special Agent also searched his computer for case records using the search terms "Jennifer," "Sharp," "Stilliard," and "Vancouver," because those terms referred to the alleged suspect and the location of the alleged assault. DSOF at ¶ 12. Additionally, the Special Agent searched Outlook Email by checking the folder created for the investigation using the same search terms, as well as searching the case folder on the shared drive using the same search terms. DSOF at ¶ 12. The search located 73 responsive pages, but did not locate a recorded interview of the Minor Victim. DSOF at ¶ 13.

On May 12, 2023, Defendant responded to Plaintiff's FOIA request and produced 2 pages in their entirety and redacted portions of the remaining 71 pages pursuant to certain FOIA exemptions and the Federal Victims' Protection and Rights Act. DSOF at ¶ 14.

On July 28, 2023, Plaintiff appealed the adequacy of the search and the withholdings applied to the responsive documents. DSOF at ¶ 15. Plaintiff challenged the adequacy of the search, alleging that Plaintiff's counsel had "been informed by multiple persons who conducted investigations into the alleged incident" that Defendant's interview with the

Minor Victim was "audio recorded," and "part of [Defendant's] HSI file in this case." DSOF at ¶ 15. Plaintiff therefore requested that Defendant produce the "audio and/or video recordings of [Defendant's] interview of [the Minor Victim]." Doc. 1-1, Ex. 4 at 23.

On August 23, 2023, Defendant informed Plaintiff of its final decision that Defendant's search, which was "reasonably calculated to uncover all relevant documents," was adequate and the withholdings proper, and directed Plaintiff that the "information [Plaintiff] is seeking may lie with the Vancouver, B.C. Police Department." DSOF at ¶ 16.

On December 6, 2023, Plaintiff filed this action seeking review of Defendant's response to Plaintiff's request under FOIA. Doc. 1. On February 26, 2024, the parties stipulated to limit the scope of Defendant's motion for summary judgment to (1) the adequacy of Defendant's search; and (2) Plaintiff's allegation that Defendant audio recorded its interview with the Minor Victim and that Defendant failed to produce this alleged recording. Docs. 16, 17.

On January 5, 2024, Defendant's Government Information Law Division ("GILD"), had HSI's RDU task HSI Vancouver, B.C., to conduct a search because the alleged assault took place in Vancouver. DSOF at ¶ 17. That same day, HSI Vancouver conducted a search using ICM and the Unified Passenger database ("UPAX"), which resulted in no records. DSOF at ¶ 17.

On February 22, 2024, in response to Plaintiff's allegation that HSI recorded an interview with the Minor Victim (Doc. 1 at 3, ¶ 11), GILD requested the Special Agent to conduct a supplemental search for any recorded statement of the Minor Victim. DSOF at ¶ 18. The Special Agent conducted a search using ICM, Outlook Email, HSI's shared drive, and Microsoft Teams using the search terms "Jennifer Sharp-Stilliard," "Vancouver," "interview," the HSI case number, and the name of the Minor Victim. DSOF at ¶ 19. The Special Agent also searched his computer's hard drive, shared drive and Outlook Email doing a manual check using the same keyword search terms and checking by file type. DSOF at ¶ 19. The search did not produce any new, responsive records or a recorded statement of the Minor Victim. DSOF at ¶ 19. Moreover, there was no reference

to an HSI recorded statement of the Minor Victim in HSI's ROIs for the investigation. DSOF at ¶ 19.

### III. LEGAL STANDARDS

"As a general rule, all FOIA determinations should be resolved on summary judgment." *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1998)). A court grants summary judgment where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to show there are no genuine issues of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"When considering the adequacy of a records search, the agency has the burden to show that it has 'conducted a search reasonably calculated to uncover all relevant documents.'" *Albers v. FBI*, No. 16-cv-05249-BHS, 2017 WL 736042, at *3 (W.D. Wash. Feb. 24, 2017) (quoting *Zemansky*, 767 F.2d at 571). "Courts do not focus on 'whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the *search* for those documents was *adequate*.'" *Id.* (alteration and emphasis in original) (quoting *Zemansky*, 767 F.2d at 571).

The adequacy of an agency's search is judged by a standard of reasonableness. *Zemansky*, 767 F.2d at 571. The agency is therefore under a duty to conduct a "reasonable" search for responsive records using methods that can be reasonably expected to produce the information requested to the extent they exist. *See* 5 U.S.C. § 552(a)(3)(C); *Zemansky*, 767 F.2d at 571. While "there is no requirement that an agency search every record system . . . or that a search be perfect . . . the search must be conducted in good faith using methods that are likely to produce the information requested if it exists." *Rodriguez v. McLeod*, No. 08-cv-0184, 2008 WL 5330802, at *2 (E.D. Cal. Dec. 18, 2008). Accordingly, the

adequacy of the search is "generally determined *not* by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (emphasis added).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571. These declarations "are accorded a presumption of good faith," and, absent contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Ford v. U.S. Dep't of Justice*, No. 07-cv-1305, 2008 WL 2248267, at *2 (D.D.C. May 29, 2008) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (approving reliance on affidavit of agency employee responsible for coordinating FOIA search, although affidavit contained information provided to the affiant through her interviews of other individuals).

Plaintiff can only avoid summary judgment by offering specific evidence rebutting the agency's declarations. *See Ford*, 2008 WL 2248267, at *4. That evidence must be more than "[m]ere speculation as to the existence of records not located as a result of the agency's search." *Id.*; *see also Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 238 (D.D.C. 2017) ("[Plaintiff] does not point to any evidence indicating that text messages were used for agency business or otherwise show that searching text messages would be likely to lead to responsive documents."); *Mosby v. Hunt*, No. 09-cv-1917, 2010 WL 1783536, at *3 (D.D.C. May 5, 2010) ("Plaintiff's general criticism of the search fails to cast any doubt on defendant's evidence demonstrating an adequate search.").

**IV. DEFENDANT CONDUCTED AN ADEQUATE SEARCH, AND THE SEARCH WOULD HAVE LIKELY LOCATED ANY RECORDED STATEMENT OF THE MINOR VICTIM IF IT EXISTED.**

On June 28, 2022, Plaintiff requested all records in the file for Jennifer Moore Sharp-Stilliard, DOB: XX/XX/1982, COB: UK, related to the ICE HSI investigation of the incident alleged by C.T., DOB: XX/XX/2001. DSOF at ¶ 1.

Because Defendant determined HSI to be the program office reasonably likely to possess responsive records, Defendant tasked HSI to conduct the search. DSOF at ¶ 3-6.

- 7 -

1    On July 8, 2022, HSI's RDU conducted a search of the ICM database which serves as the
2    core law enforcement case management tool used by HSI personnel.  DSOF at ¶ 7.  HSI's
3    RDU conducted a search of the ICM using the search terms "Jennifer Moore Sharp-
4    Stilliard," "Jennifer Sharp-Stilliard," "Jennifer Sharp," "Jennifer Stilliard," Plaintiff's date
5    of birth, country of birth, and social security number, and the name and date of birth of the
6    Minor Victim.  DSOF at ¶ 7.  HSI's RDU then tasked the Special Agent responsible for
7    the investigation into the alleged sexual assault to conduct a search because he was the
8    individual likely to have responsive records.  DSOF at ¶ 8.

9    Per Defendant's FOIA Office's instructions, the Special Agent was directed to
10   conduct a search of his file systems, including both paper files and electronic files, which,
11   in his judgment, based on his knowledge of the way he routinely kept records, would most
12   likely contain responsive documents.  DSOF at ¶ 9.  Similarly, the Special Agent's
13   determination of whether and how electronic locations needed to be searched in response
14   to Plaintiff's FOIA request, as well as how to search Microsoft Outlook email files, was
15   based on the manner in which he maintained his files.  DSOF at ¶¶ 9-11.

16   Accordingly, on July 8, 2022, the Special Agent conducted a search of ICM,
17   Outlook Email, HSI's shared drive, and the Special Agent's computer, because those were
18   the places in which he routinely kept records.  DSOF at ¶ 12.  The Special Agent searched
19   ICM, Outlook email, and HSI's shared drive using search terms containing the HSI case
20   number and "Jennifer Sharp-Stilliard" because the records would be affiliated with the HSI
21   case number or the name of the subject of investigation.  DSOF at ¶ 12.  The Special Agent
22   also searched his computer for case records using the search terms "Jennifer," "Sharp,"
23   "Stilliard," and "Vancouver," because those terms referred to the alleged suspect and the
24   location of the alleged assault.  DSOF at ¶ 12.  Additionally, the Special Agent searched
25   Outlook Email by checking the folder created for the investigation using the same search
26   terms, as well as searching the case folder on the shared drive using the same search terms.
27   DSOF at ¶ 12.  The search located 73 responsive pages and did not locate a recorded
28

interview of the Minor Victim. DSOF at ¶ 13. Those documents were produced to Plaintiff on May 12, 2023. DSOF at ¶ 14.

On July 28, 2023, Plaintiff appealed the adequacy of the search and the withholdings applied to the responsive documents. DSOF at ¶ 15. Plaintiff challenged the adequacy of the search, alleging that Plaintiff's counsel had "been informed by multiple persons who conducted investigations into the alleged incident" that Defendant's interview with the Minor Victim was "audio recorded," and "part of [Defendant's] HSI file in this case." DSOF at ¶ 15.

On August 23, 2023, Defendant informed Plaintiff of its final decision that Defendant's search, which was "reasonably calculated to uncover all relevant documents," was adequate, the withholdings proper, and directed Plaintiff that the "information [Plaintiff] is seeking may lie with the Vancouver, B.C. Police Department." DSOF at ¶ 16.

On January 5, 2024, in response to Plaintiff's Complaint and allegation that HSI recorded an interview with the Minor Victim (Doc. 1 at 3, ¶ 1), Defendant's GILD had HSI's RDU task HSI Vancouver, B.C., to conduct a supplemental search because the alleged assault took place in Vancouver. DSOF at ¶ 17. That same day, HSI Vancouver conducted a search using ICM and the UPAX, which resulted in no records. DSOF at ¶ 17.

On February 22, 2024, GILD requested the Special Agent responsible for the investigation into the alleged sexual assault to conduct a supplemental search for any recorded statement of the Minor Victim. DSOF at ¶ 18. The Special Agent conducted a search using ICM, Outlook Email, HSI's shared drive, and Microsoft Teams using the search terms "Jennifer Sharp-Stilliard," "Vancouver," "interview," the HSI case number, and the name of the Minor Victim. DSOF at ¶ 19. The Special Agent also searched his computer's hard drive, shared drive and Outlook Email doing a manual check using the same keyword search terms and checking by file type. DSOF at ¶ 19. The search did not produce any new, responsive records or an audio recording of any interview of or statement made by the Minor Victim (whether recorded by HSI or any other agency). Moreover,

there was no reference to an HSI recorded statement of the Minor Victim in HSI's ROIs for the investigation. DSOF at ¶ 19.

Despite conducting a reasonable search designed to locate all responsive documents, Defendant took additional steps to confirm the reasonableness of its search based on Plaintiff's insistence that Defendant recorded an interview of the Minor Victim. DSOF at ¶¶ 17-19. Defendant identified the Special Agent in charge of the investigation at the Phoenix Field Office as an individual likely to have responsive records and tasked him to conduct not one, but two searches of multiple systems. DSOF at ¶¶ 8-12, 18-19.

Defendant's declaration (DSOF, Ex. 1) demonstrates that Defendant conducted a "diligent search for . . . [responsive] documents in the places in which they might be expected to be found." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 772 (9th Cir. 2015). The Court should afford this evidence significant weight. *See Withey v. FBI*, No. 18-cv-1635-JCC, 2020 WL 885974, at *2 (W.D. Wash. Feb. 24, 2020) (noting that agency declarations describing the search process are entitled to "a presumption of good faith"). Declarations are sufficient where, as here, they "provide[] detail as to the actual search [including] file[s] reviewed, locations searched, and manner and procedure for selecting and searching files." *Rodriguez*, 2008 WL 5330802, at *5.

The reason that Defendant cannot locate a recorded interview of the Minor Victim is simple—HSI never conducted one, and if another law enforcement agency did, it was not provided to HSI and was therefore never placed in Defendant's files. DSOF at ¶¶ 13, 17, 19. The Special Agent responsible for the investigation into the alleged sexual assault confirmed that no recorded interview of the Minor Victim was located (whether recorded by HSI or any other agency), nor was there reference to an HSI recorded interview of the Minor Victim in HSI's ROIs for the investigation. DSOF at ¶¶ 13, 19. Because no evidence in the record suggests that HSI recorded an interview of the Minor Victim, or that HSI's file contains any other recorded interview of the Minor Victim, Plaintiff's speculative arguments about the possible existence of a recorded interview are insufficient, and Defendant's declaration to the contrary demonstrates that Defendant is entitled to

summary judgment as to the adequacy of the search. *See Hunton & Williams LLP*, 248 F. Supp. 3d at 238 (granting summary judgment for the defendant where the plaintiff argued that the defendant's failure to search text messages was inadequate where no evidence in the record suggested that employees used text messages to conduct official business); *Weewee v. I.R.S.*, No. CIV-99-475-T-JMR GEE, 2001 WL 283801, at *5 (D. Ariz. Feb. 13, 2001) (granting summary judgment to the defendant on the adequacy of the search and noting that the defendant did not find the particular document that the plaintiff alleged existed because "there were no files to be found"); *Ford*, 2008 WL 2248267, at *4 (granting summary judgment to the defendant and noting that "[a]n agency's lack of success in locating responsive records does not render the search inadequate where the agency's supporting declarations establish its compliance with FOIA," despite the plaintiff's allegations that responsive records exist); *SafeCard Servs., Inc.*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").

## V.     CONCLUSION

Defendant conducted several adequate searches in response to Plaintiff's FOIA request. The crux of Plaintiff's complaint is that she did not receive a recorded interview she believes exists. However, the adequacy of the search is not determined by the outcome. Plaintiff is therefore not entitled to relief with regard her FOIA request and judgment should be granted to Defendant.

RESPECTFULLY SUBMITTED April 4, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Victoria H. Gray*
VICTORIA H. GRAY
Assistant United States Attorney
*Attorneys for the United States*